[Civ. No. 5820. First Appellate District, Division Two.—August 6, 1927.]

FRANCIS J. COCHRAN, Respondent, v. E. N. BROWN et al., Defendants; UNITED RAILROADS OF SAN FRANCISCO (a Corporation) and MARKET STREET RAILWAY COMPANY (a Corporation), Appellants.

744

Wm. M. Abbott, K. W. Cannon and Ross & Ross for Appellants.

Joseph J. Bullock for Respondent.

NOURSE, J.—Plaintiff sued the defendant Brown and the two defendant railroad corporations for personal injuries suffered in a collision between an interurban car operated by the corporations and an automobile operated by the defendant Brown, and in which the plaintiff was riding as Brown's guest at the time of the collision. The cause was tried before the court sitting with a jury and resulted in a verdict in favor of the plaintiff in the sum of $5,000 against the two railroad corporations, and in a verdict absolving defendant Brown from liability. While the motion of the railroad corporations for a new trial was pending the trial court reduced the judgment to $3,000, and upon plaintiff's waiver of the excess over that amount the motion for a new trial was denied. From this modified judgment the railroad corporations have appealed upon a bill of exceptions.

The collision occurred at about midnight on December 17, 1922, while the plaintiff, riding with the defendant Brown in the latter's automobile, was attempting to cross Ellsworth Avenue in the city of San Mateo, at the intersection of Tilton Avenue. At that time, and for a long time prior thereto, the defendant corporations were operating an interurban electric car line over Ellsworth Avenue, running from San Mateo to San Francisco. As plaintiff and his companion were crossing the track at this intersection an electric car struck the right rear wheel of their automobile and carried it across the intersection, causing personal injuries to the plaintiff, which are the subject of this suit. At the time it was raining heavily and Brown had isinglass curtains on the right side of his car where the plaintiff sat. When the electric car turned into Ellsworth Avenue, about a block distant from the point of the accident, the trolley became disconnected, causing the lights to go out on the car. The trolley was replaced, but as the car proceeded along Ellsworth Avenue toward Tilton the same thing occurred again. Both the plaintiff and defendant Brown testified that they looked to their right before proceeding across Ellsworth Avenue and that they did not see the car approaching. It was the theory of the plaintiff and the defendant Brown throughout the trial that they were run down by the electric

car, which was proceeding immediately before the accident in total darkness; that the isinglass in the curtains on their automobile had been recently cleaned and afforded a good vision which would have enabled either of them to have seen the car if it had approached with the lights burning; and that the sole proximate cause of the accident was the negligence of the defendant corporations in operating the car across the street intersection without lights or without other suitable warning. We should not be understood as implying that the evidence was not in conflict, but there was substantial and competent evidence tending to support every element of the theory upon which the plaintiff relied, and this evidence fully supported the verdict of the jury.

Criticism is made of the instruction given by the trial judge to the jury, which reads: "I further instruct you that it was the duty of the motorman in charge of the car of the defendant, when approaching a public crossing, to give notice of the approach by a reasonable warning, as by blowing a whistle or ringing a bell or by such other device as might be sufficient to give timely warning to travelers of the approach of the car, and if operated at night, by having a headlight or other suitable light on the front part of said car, so as to afford time for such travelers to stop in a place of safety." The instruction is not one which can be approved generally, but we think that the objection to it goes more to the verbiage than to the substance. What the trial court apparently intended to advise the jury was that it was the duty of the corporations to operate the car with ordinary care and precaution for the purpose of avoiding others using the public streets, and that in the exercise of this ordinary care a reasonable person would give some warning in approaching a street intersection in the dark of the night in order to afford others time to stop in a place of safety. We do not understand the instruction to mean that any statute or ordinance applicable to the case required the operator of the electric car to blow a whistle or display a headlight, but we do understand it to mean that reasonable prudence would dictate that some suitable warning should be given when approaching a public crossing. "Such timely warning of the approach of a street car must be given as to enable others to avoid any danger from it, and the non-performance

of such duty in approaching such street crossing intended to be crossed is evidence of negligence.'' (25 R. C. L., p. 1243, sec. 107.) ''Because of the greater speed with which the vehicles of a street railway move, and the little noise attending their progress, it is negligence to propel cars through public streets after dark, unless they are provided with lights sufficient to notify travelers on the street of their coming, and to put such travelers on their guard against collision.'' (Idem.) ▉ The cases cited by the text emphasize the fact that the degree of care required to be exercised by the motorman is only that which a reasonable person would exercise under similar circumstances, and that from all the experiences of mankind an electric car traveling rapidly over a public street in the dark of the night without lights and without other warning of its approach is not being operated in the manner in which a reasonable and prudent person would operate it under those circumstances. As said in *Shea* v. *P. & B. V. R. R. Co.*, 44 Cal. 414, 427, ''The degree of prudence required of a party is dependent on the nature of the agency employed, as well as the time, place, and circumstances of its employment. In running a car loaded with earth on a down grade, in the night, with few lights in the immediate vicinity, a reasonable person would exercise a greater degree of care than he would in running a car where it would more readily be controlled, and in the day-time; and such prudence would not, in any respect, fall short of a reasonable prudence. It would be such prudence as a reasonable man would under such circumstances employ, in order to avoid accidents and injuries to the persons and property of others.''

▉ Taking the instruction with those later given, to the effect that the question whether the electric car was operated with ordinary care under the circumstances, was one for the jury; that negligence is the omission to do something which an ordinarily prudent person would have done under the circumstances; and that in any event the jury could not find a verdict against the railroad corporation unless they found the motorman was guilty of some negligence or carelessness in the operation of the car, and that such negligence could not be presumed from anything which

was before the jury, we are satisfied that the instruction complained of was not prejudicial.

■ It is argued on the part of the appellants that the respondent was guilty of contributory negligence as a matter of law because he knew that the appellants were in the habit of operating their electric cars upon that street, and that his vision was obscured by the rain-covered isinglass curtain. *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031], is cited in support of this theory, but the case is not in point because both the respondent and his companion testified that the isinglass curtain did not obscure their vision, that they looked to the right before approaching the car track and that if the car had been carrying a light they would have been able to see it through the curtain. The jury was fully instructed upon the issue of contributory negligence. The evidence upon that issue was in some conflict, and it was its province to resolve that conflict. There is nothing in the case which, under any conceivable theory, would support a conclusion that the respondent was guilty of contributory negligence as a matter of law.

■ It is argued that the case was not at issue because the respondent had filed an amended complaint bringing in the Market Street Railway Company as a party defendant after a demurrer had been filed to the original complaint, and that this was done without first having obtained leave of court as required by section 473 of the Code of Civil Procedure. The amended complaint was served on the two defendants included in the original complaint and upon the Market Street Railway Company on October 20, 1923, and on the same day the railway corporations filed their joint demurrer to the amended complaint, which was overruled January 3, 1924. Thereafter the same defendants filed their joint answer to this amended complaint, but have not at any time prior to filing their brief on this appeal raised the point that the Market Street Railway Company was not properly joined as a party defendant. In demurring to and answering the amended complaint and in proceeding with the trial without objection this defendant must be deemed to have waived any irregularity in the manner in which it was made a party defendant.

■ Finally, it is argued that the verdict is excessive because it was shown that the respondent has suffered no permanent injuries from the accident; that he merely suffered a cut over one of his eyes and the fracture of one of his ribs, all of which confined him to a hospital for not over six weeks, and entailed a total expense for medical treatment of not more than $202.05. The question of what was a reasonable amount of damages to be allowed was one to be determined by the jury and cannot be controlled by the appellate court unless it appears from the record that it was the result of passion or prejudice. Appellants do not argue that such is the case here, but it is their contention that because the respondent was a cripple from an accident received a number of years prior to this accident the amount of the verdict in this case was the result of sympathy on the part of the jury for respondent's general condition. The difficulty of appellants' argument is that it is a theory which cannot be proved, and there is, therefore, nothing in the record which would justify this court in disturbing the verdict as modified by the trial judge.

Judgment affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1927.